**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB -6 2003

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DEBBIE MITCHELL and STEVEN MITCHELL, individually and As parents of and next friends of STEVEN BLAKE MITCHELL, | ) ) ) ) | CIVIL ACTION FILE NO.  1:00CV2096-BBM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| HARO BICYCLE CORPORATION, | ) ) | |
| Defendant. | ) ) | |

### DEFENDANT HARO BICYCLE CORPORATION'S
### MOTION FOR SUMMARY JUDGMENT

COMES NOW Haro Bicycle Corporation ("Haro"), Defendant in the above-captioned action and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 of the United States District Court for the Northern District of Georgia, move for the entry of summary judgment in its favor.  The grounds of this motion are that there is no genuine issue of material fact to be tried and Haro is entitled to judgment as a matter of law. This motion is based upon all pleadings and discovery of record herein, as well as the affidavits of Jim Ford and Carl H. Meiss, III filed contemporaneously with this motion.  Haro has set

75

forth more specifically the reasons it is entitled to summary judgment in the memorandum of law accompanying this motion.

**WHEREFORE**, Defendant Haro Bicycle Corporation prays that its Motion for Summary Judgment as to the claims made by Plaintiffs be granted and the case dismissed in Defendant's favor.

Respectfully Submitted,

PURSLEY LOWERY MEEKS LLP

BY: _____

John R. Lowery
Georgia Bar No. 460175
Audrey R. Kohn
Georgia Bar No. 591485

SunTrust Plaza - Suite 4540
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
(404) 880-7180 (telephone)
(404) 880-7199 (facsimile)

Attorneys for Defendant
Haro Bicycle Corporation

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DEBBIE MITCHELL and STEVEN ) <br> MITCHELL, individually and ) <br> As parents of and next friends ) <br> of STEVEN BLAKE MITCHELL, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HARO BICYCLE CORPORATION, ) <br> ) <br>     Defendant. ) <br> ) | CIVIL ACTION FILE <br> NO.  1:00CV2096-BBM |

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for the opposing party with a copy of the within and foregoing **Defendant Haro Bicycle Corporation's Motion for Summary Judgment** by depositing a copy of same in the United States mail in an envelope properly addressed to the following, with adequate postage thereon to ensure proper delivery:

> Wade K. Copeland, Esquire
> Ashley Sexton, Esquire
> Carlock, Copeland, Semler & Stair, LLP
> 2600 Marquis Two Tower
> 285 Peachtree Center Avenue
> Atlanta, Georgia  30303-1235

N O T I C E
- - - - - -



To:  Wade K. Copeland, Esq.
     Carlock Copeland Semler & Stair
     2600 Marquis Two Tower
     285 Peachtree Center Avenue, N.E.
     P.O. Box 56887
     Atlanta, GA  30343-0887


February 7, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Debbie Mitchell, et al,

                    plaintiff              CIVIL ACTION

          v.                               NO. 1:0-cv-2096-BBM

Haro Bicycle Corporation, et al,

                    defendant


NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     On 2/6/03, Haro Bicycle Corporation,

filed a motion for  summary judgment in this Court, case document

number 75.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

W/75

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Ashley E. Sexton, Esq.
     Carlock Copeland Semler & Stair
     2600 Marquis Two Tower
     285 Peachtree Center Avenue, N.E.
     P.O. Box 56887
     Atlanta, GA  30343-0887


February 7, 2003


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Debbie Mitchell, et al,

                    plaintiff                    CIVIL ACTION

          v.                                     NO. 1:0-cv-2096-BBM

Haro Bicycle Corporation, et al,

                    defendant


               NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
               -------------------------------------------

     On 2/6/03, Haro Bicycle Corporation,

filed a motion for  summary judgment in this Court, case document

number 75.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Kenneth M. Sissel, Esq.
     Office of Kenneth M. Sissel
     746 Pleasant Hill Road
     Lilburn, GA  30047



February 7, 2003



                    UNITED STATES DISTRICT COURT
                            for the
                    NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION


Debbie Mitchell, et al,

                    plaintiff                    CIVIL ACTION

             v.                                  NO. 1:0-cv-2096-BBM

Haro Bicycle Corporation, et al,

                    defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            --------------------------------------------


        On 2/6/03, Haro Bicycle Corporation,

filed a motion for  summary judgment in this Court, case document

number 75.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

<div style="margin-left:50%">
Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia
</div>

Copies to counsel of record

N O T I C E
- - - - - -


To:  Audrey R. Kohn, Esq.
     Pursley Lowery & Meeks
     SunTrust Plaza, Suite 4540
     303 Peachtree Street, N.E.
     Atlanta, GA  30308



February 7, 2003



                  UNITED STATES DISTRICT COURT
                           for the
                  NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION

Debbie Mitchell, et al,

                    plaintiff                CIVIL ACTION

          v.                                 NO. 1:0-cv-2096-BBM

Haro Bicycle Corporation, et al,

                    defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            ---------------------------------------------

       On 2/6/03, Haro Bicycle Corporation,

filed a motion for  summary judgment in this Court, case document

number 75.

       Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  James Dartlin Meadows, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA   30305


February 7, 2003


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Debbie Mitchell, et al,

                    plaintiff              CIVIL ACTION

          v.                               NO. 1:0-cv-2096-BBM

Haro Bicycle Corporation, et al,

                    defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              -------------------------------------------


        On 2/6/03, Haro Bicycle Corporation,

filed a motion for  summary judgment in this Court, case document

number 75.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Gregory *Scott* Esslinger, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305


February 7, 2003



                 UNITED STATES DISTRICT COURT
                          for the
                 NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION


Debbie Mitchell, et al,

                    plaintiff                    CIVIL ACTION

          v.                                     NO. 1:0-cv-2096-BBM

Haro Bicycle Corporation, et al,

                    defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


        On 2/6/03, Haro Bicycle Corporation,

filed a motion for  summary judgment in this Court, case document

number 75.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.  Id. at 519.  See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by af-fidavit or other materials,  "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB -6 2003

LUTHER D. THOMAS, CLERK
By: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DEBBIE MITCHELL and STEVEN ) <br> MITCHELL, individually and ) <br> As parents of and next friends ) <br> of STEVEN BLAKE MITCHELL, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HARO BICYCLE CORPORATION, ) <br> ) <br>     Defendant. ) <br> ) | CIVIL ACTION FILE <br> NO.  1:00CV2096-BBM |

## BRIEF IN SUPPORT OF THE DEFENDANT HARO BICYCLE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Haro Bicycle Corporation ("Haro"), Defendant in the above-captioned action, and files this Brief in Support of its Motion for Summary Judgment, showing this Honorable Court as follows:

### I.   INTRODUCTION

Plaintiff Steven Blake Mitchell ("Blake") and his parents, Debbie and Steven Mitchell, (collectively referred to as "Plaintiffs") filed this personal injury suit seeking to hold Haro strictly liable for injuries suffered by Blake.  Haro does not dispute that Blake was injured while jumping his bicycle on and over a homemade ramp constructed by his father.  Haro does not

dispute that, while the bicycle was airborne, Blake somehow positioned the bicycle such that, when it eventually landed, he was injured by the seat (or "saddle") of the bicycle.  Haro strongly disputes, however, that it is strictly liable for the injuries arising out of this (almost freakish) accident.

Haro does not manufacture bicycles.  Haro does not manufacture component parts for bicycles.  Haro does not assemble, modify or package bicycles or bicycle component parts. Haro is a wholesale distributor and, as such, is not subject to strict liability on the basis of any alleged product defect.

Moreover, strict liability centers on the condition of the product when it was sold new.  It is undisputed that the bicycle at issue had undergone significant modifications made post-sale but prior to Blake's accident.  It is also undisputed that one of these modifications incorporated the very defect alleged by Plaintiffs to have been the proximate cause of Blake's injuries. Also, Plaintiffs completely removed the brakes and/or braking system of the bicycle and, in so doing, they altered the bicycle's design and extinguished Blake's ability to control the bicycle.

Finally, even if the question of whether there was a design defect in the bicycle is reached in this case, summary judgment is still appropriate because the utility of incorporating a seat into

2

the design of a bicycle far outweighs the risk or probability of

an injury such as the one at issue in this litigation.

## II.   **STATEMENT OF FACTS**

### A.   **Haro is a wholesale distributor of bicycles:**

Haro is a well-respected and recognized name in the bicycle

industry and has been in the business of wholesale bicycle

distribution since 1978.  (Affidavit of Jim Ford attached hereto

and marked as Exhibit A [hereinafter "Ford Aff."] ¶ 3).  Haro

does not manufacture, assemble or sell by direct retail any

bicycles or any bicycle component parts.  (Deposition of Jim

Ford ["Ford Dep."] p. 38; Ford Aff. ¶ 4).  Haro has no design

control over the component parts incorporated in the assembly of

the bicycles it distributes, nor does it collaborate with

component manufacturers regarding the manufacture of their

products.  (Ford Dep. pp. and 41-42).  Haro is strictly a

wholesale distributor of Haro Bicycles, a particular proprietary

brand of bicycle.  (Ford Aff. ¶ ¶ 5, 7).

Once assembled, Haro bicycles are packaged in boxes and

shipped for storage from an assembly plant in Taiwan to either

California or a public warehouse in New Jersey.  (Ford Dep. p.

55; Ford Aff. ¶ 8).  Haro does not remove the bicycles from the

boxes or modify them in any manner; instead, the bicycles are

left in the boxes until they reach retailers for sale.  (Id.).

3

All Haro markings or decals are placed on the bicycles by either the manufacturer of the component part on which the marking appears, or the assembler once the bicycle is complete and ready for shipping.   (Ford Aff. ¶ 7).

**B.   The bicycle at issue and post-sale modifications:**

In 1998, Blake's grandfather purchased the bicycle at issue for Blake in a used condition at a flea market in Lithia Springs.   (Plaintiffs' Responses to Haro's First Set of Continuing Interrogatories [hereinafter "Plaintiffs' Interrogatory Responses"] Nos. 12 and 13).   The frame of the bicycle is that of a 1994 Shredder model bicycle distributed by Haro. (Ford Dep. p. 22).

The 1994 Shredder is a freestyle bicycle for which Haro specified a VL100 model saddle designed and manufactured by Velo.   (Id. pp. 29, 31).   This particular Velo saddle was the only saddle incorporated into the assembly of the 1994 Shredder and it was specifically designed and marketed by Velo as a saddle for freestyle bicycles. (Id. p. 48; Ford Aff. ¶ 12). There is no evidence regarding the number of people who owned the bicycle prior to Plaintiffs, nor the extent to which the bicycle may have been modified and/or misused by previous owners.   What is known is that sometime prior to Blake's accident, the original freestyle VL100 saddle had been

4

completely removed and replaced with a different, BMX style saddle. (Ford Dep. pp. 26, 64). This BMX saddle had never been incorporated into the 1994 Shredder bicycle model. (Ford Dep. p. 52). Also, among the known modifications is that Plaintiffs extinguished Blake's ability to control the bicycle by completely removing the brakes and/or braking system from the bike. (Plaintiffs' Interrogatory Responses No. 13).

## C.  **Blake's accident**:

Using scrap plywood and two by fours, Blake's father crudely constructed a "ramp" in Plaintiffs' front yard. (Plaintiffs' Interrogatory Responses No. 14; Exhibit 1 to Ford Dep. and attached hereto and marked as Exhibit B). The peak of the ramp extended one and one half feet from the ground and did not provide a sloped surface for Blake to land upon. (Id.). Blake was racing his bicycle down a slope, without brakes, toward this ramp and using it to catapult him and his bicycle into the air. (Plaintiffs' First Amended Complaint, ¶ 6; Plaintiffs' Interrogatory Responses No. 14). On one such jump, the bike became positioned in mid-air causing Blake to land "in such a way" that the nose of the saddle injured his rectum.

(Plaintiffs' First Amended Complaint, ¶ 10).[1]   There is no

allegation or evidence that the saddle came loose, or that any

part of the remainder of the bicycle somehow malfunctioned or

played any role in causing Blake's injuries.

As many as ten thousand 1994 Shredder model bicycles were

sold in the United States, and Haro has never received notice of

any claims or lawsuits involving the 1994 Shredder.  (Ford Dep.

P. 45-46; (Ford Aff. ¶ 13).  Haro has never heard of any bicycle

being involved in an accident similar to the one described by

Plaintiffs and/or an accident that caused similar injuries.

(Id.).  Neither Haro nor Velo, which has been in business since

1979, have ever received notice of any claims or lawsuits of any

nature involving either the VL100 saddle or the BMX saddle at

issue, or any saddle designed and manufactured by Velo.  (Id.;

Deposition of Stella Yu ["Yu Dep."] pp. 13 and 34).

### III.   **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories and admissions on file,

---

[1] Filed concurrently with Defendant's Motion for summary judgment
is the affidavit of Carl H. Meiss, III (hereinafter "Meiss
Aff."). Mr. Meiss, who is an expert in bicycle safety and safe
bicycle practices, opines that in order for the accident
complained of in this case to have occurred, Blake had to have
lost some degree of control over the bicycle. (¶ 12).

together with the affidavits, if any, show that there is no
*genuine issue as to any material fact* and the moving party is
entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).
The moving party bears the initial burden of showing that there
are no genuine issues of material fact that should be decided at
trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986); Clark v. Coats & Clark, Inc., 929
F.2d 604 (11th Cir. 1991).

The *non-movant must then* "go beyond the pleadings" and
introduce competent evidence in the form of affidavits,
depositions, admissions and the like, establishing "specific
facts showing there is a genuine issue for trial." Celotex, 477
U.S. at 324, 106 S.Ct. at 2553. The court, resolving all doubts
in favor of the nonmoving party, must determine "whether a fair-
minded jury could return a verdict for the plaintiff on the
evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  Summary
judgment is mandated if the party that will bear the burden of
proof at trial fails to establish the existence of every element
essential to its case. Celotex, 477 U.S. at 322, 106 S.Ct. at
2551.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   HARO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT IS NOT A PRODUCT MANUFACTURER.

As a matter of law, Haro cannot be subject to strict liability for Blake's injuries because it is a product distributor, not a manufacturer.  In 1987, the legislature expressly amended Georgia's strict liability statute to restrict its reach to *actual* manufacturers, as opposed to *ostensible* manufacturers.  O.C.G.A. § § 51-1-11 and 51-1-11.1.  The intended impact of the amendment was "to overrule those cases that had created a broad category of entities that had no real role in the creation of products" as being responsible as "*manufacturers*," thereby exempting from strict liability product sellers and distributors, as well as entities that label and market an already finished product.  Freeman v. United Cities Propane Gas of Georgia, Inc., 807 F. Supp. 1533, 1540 (M.D. Ga. 1992); see also Alltrade, Inc. v. McDonald, 213 Ga. App. 758, 760, 445 S.E.2d 856, 858 (1994) (holding that the legislature did not intend "manufacturers" to include those entities that had no real role in the creation of products, such as those who merely affix a label to a product and sells it under its trade name).  Entities such as Haro are the paradigm for the kinds of entities the legislature intended to exclude from exposure to

8

strict liability; Buford v. Toys R. Us., Inc. 217 Ga. App. 565,
458 S.E.2d 373 (1995).

Under current Georgia law, an entity will only be deemed a
"manufacturer" for strict liability purposes if it falls into of
three categories:

a) an actual manufacturer or designer of the product;

b) a manufacturer of a component part which failed and
caused the plaintiff's injury; or

c) an assembler of component parts who then sells the item
as a single product under its own trade name.

Freeman, 807 F. Supp. at 1539 (citing Morgan v. Mar-Bel, Inc.,
614 F. Supp. 438 (N.D. Ga. 1985)).  An "actual manufacturer" is
one who has an "active role" in the production, design, or
assembly of products and places them in the stream of commerce.
Alltrade, 213 Ga. App. at 760, 445 S.E.2d at 858; Freeman, 807
F. Supp. at 1540.  One who prescribes and controls the
specifications of a product as a "designer" is not subject to
statutory strict liability. Freeman, 807 F. Supp. at 1541;
Morgan, 614 F. Supp. at 441. "There is certainly no precedent
for holding [a product distributor] responsible under any theory
of defective design."  Russell v. Makita U.S.A., Inc., 2000 WL
174908, *1 (N.D. Ga. 2000) (citing Farmer v. Brannan Auto Parts,
Inc., 231 Ga. App. 353, 355, 498 S.E.2d 583, 585 (1998)); see

9

also Hester v. Human, 211 Ga. App. 351, 39 S.E.2d 50 (1994)

(holding the same regarding retailers).

It is undisputed that Haro did not manufacture the bicycle

at issue.  (Ford Dep. p. 38).  It is undisputed that Haro has no

design control over the saddles used on its bicycles or any

other component part, nor does it collaborate with component

manufacturers regarding the design or manufacture of their

products.[2]  (Ford Dep. pp. and 41-42).  It is undisputed that

Haro has no role in assembling Haro bicycles.[3]  (Ford Dep. p.

38).  Once assembled, the bicycles are packaged in boxes and

shipped for storage from Taiwan to either California or a public

warehouse in New Jersey.  (Ford Dep. p. 55; Ford Aff. ¶ 8).

Haro does not remove the bicycles from the boxes or modify the

bicycles or the boxes in any manner; instead, the bicycles are

left in those boxes until they reach the retail sellers who then

sell them to the public.  (Id.).  Any markings or decals

referencing Haro are placed on a bicycle either by the component

part manufacturer or the assembler once the bicycle is complete

and ready for sale.  (Ford Aff. ¶ 7).

---

[2] It is undisputed that the saddle on the bicycle was designed and
manufactured by Velo Enterprise Company, Inc. which was
dismissed from this litigation on jurisdictional grounds.

[3] It is undisputed that the assembler of the bicycle was a
Taiwanese company that has never been named as a party to this
litigation.

10

The sum total of Haro's involvement with the production of the bicycles it distributes is limited to communicating to the assembler the type of component parts it wants incorporated into the various bicycle models.  (Ford Aff. ¶ 7).  This level of involvement is not sufficient as a matter of law to subject Haro to strict liability.  Snow v. Bellamy Mfg. & Repair, 1995 WL 867859 (N.D. Ga. 1995).  In Snow, Southern Comfort ordered a trailer custom-built to its specifications.  It not only specified its dimensions and how certain components were to be placed in its interior, it specifically directed that nothing be constructed to provide access into the trailer's utility compartment.  As such, no ladder, steps, handles, or grab bars were installed.  After falling from the utility compartment, plaintiff brought a strict liability claim against Southern Comfort.  The Court granted summary judgment to Southern Comfort holding that, even though Southern Comfort had direct input into the design of the very aspect of the trailer that caused the injury, as a matter of law, this alone did not constitute the "active role in the production, design, or assembly of products" necessary for strict liability to attach.  Id. at *5; see also Freeman, 807 F. Supp. at 1541 (rejecting the proposition that a defendant can be deemed a manufacturer where it prescribes and controls the specifications and quality standards for an item

constructed by another); <u>Schneider v. Tri Star International,</u>
<u>Inc.</u>, 223 Ga. App. 85, 86, 476 S.E.2d 846, 848-849
(1996)(finding no strict liability even where defendant
specified the size, appearance, hardness and packaging of the
product, and performed quality checks on the products it
received to confirm compliance with its specifications);
<u>Alltrade</u>, 213 Ga. App. 758, 445 S.E.2d 856 (placing a product in
the stream of commerce under one's trade name is insufficient to
subject party to strict liability as a manufacturer).

In this case, because Haro is not a manufacturer within
Georgia's strict liability statute, it is not subject to strict
liability for Blake's injuries as a matter of law.   Summary
judgment is therefore appropriate.

**B.   HARO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE CONDITION
OF THE BICYCLE WHEN SOLD NEW DID NOT, AS A MATTER OF LAW,
CAUSE BLAKE'S INJURIES.**

As a matter of law Plaintiffs cannot demonstrate the
existence of proximate causation, the most fundamental element
of their claim, because of substantial post-sale modifications
to the bicycle.   To establish a claim for strict liability,
"plaintiffs are required to demonstrate that defendant's product
was `not merchantable and reasonably suited to the use intended,
and *its condition* **when sold** *[was] the proximate cause of the*
*injury sustained.'*" <u>Jones v. Amazing Products, Inc.</u>, 2002 WL

12

31354973, *4 (N.D. Ga. 2002)(citation omitted)(emphasis added).

Georgia law is clear that a manufacturer cannot be held liable

for a defect in a product if the defect was not present when the

product left the manufacturer's control. Wheat v. Sofamor,

S.N.C., 46 F. Supp.2d 1351, 1360 (N.D. Ga. 1999); see also

Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 494

(11th Cir. 1997) (holding that "[a] plaintiff must show that the

proximate cause of the injury was a defect which existed when

the product was sold."). Where reasonable minds cannot differ

as to proximate cause, summary judgment is appropriate. Timmons

v. Ford Motor Co., 982 F. Supp. 1475, 1481 (S.D. 1997); see also

Powell v. Harsco Corp., 209 Ga. App. 348, 433 S.E.2d 608 (1993).

     The 1994 Shredder bicycle used by Blake was substantially

modified on at least two occasions (about which the parties are

aware) after it was sold new.  (Ford Dep. p. 22).  Due to these

post-sale modifications to the bicycle, Plaintiffs cannot, under

any evidence in the record, demonstrate that the proximate cause

of Blake's injuries was a design defect in the original bike.

Therefore, even if Haro could somehow be considered a

"manufacturer" for strict liability purposes, which it cannot,

summary judgment for Haro is appropriate.

     **1.   The very defect alleged to have caused Plaintiffs'
          injury was incorporated into the bicycle after it was
          sold new.**

Plaintiffs' Complaint is based upon their contention that "[t]he saddle on which Blake was riding was designed in such a way that the saddle had a very hard narrow nose. This defect in design made the bicycle unmerchantable and not reasonably suited for its intended use." (Plaintiffs' First Amended Complaint ¶ 16). It is undisputed, however, that the saddle about which Plaintiffs complain is not the saddle originally sold on the bicycle. (Ford Dep., pp. 24-25; Exhibit 2 to Ford Dep.). The original saddle had been removed and replaced with the seat that Plaintiffs allege caused Blake's injuries. (Id.).

While all bicycle saddles share the same general shape in that they narrow toward the front end so that the cyclist can pedal without interference, the saddles at issue are different from one another. (Meiss Aff. ¶ 8). Saddles for freestyle bicycles, like the 1994 Shredder, tend to be wide and padded, whereas BMX saddles, like the one the bicycle at the time of Blake's accident, are specifically designed and manufactured to be narrow with little or no padding. (Ford Dep. p. 25; Yu Depo. pp. 4749, 54). The narrower design for BMX bicycles improves BMX bicycle performance and minimizes interference with the rider's ability to shift his weight back and forth while pedaling, thereby enabling the rider to accelerate quickly and better manipulate and

14

control the bicycle.  (Meiss Aff. ¶ 8).  Little or no padding is

incorporated into saddles for BMX bicycle saddles because they

contemplate cyclists who do not sit while riding. (Id.).[4]

Even though this altered aspect of the bicycle serves the

same basic function or purpose, liability will not attach

because the product is not being used "as it was originally

manufactured and designed."  Talley v. City Tank Corp., 158 Ga.

App. 130, 134, 279 S.E.2d 264, 269 (1981).  There can be no

strict liability where "the evidence is uncontroverted that the

original design of the manufacturer's product has been totally

eliminated and replaced so that the only similarity between the

old and the new is the mere basic function to be performed."  Id.[5]

---

[4] Had the VL100 freestyle saddle been on the bicycle at the time
of Blake's accident, it is highly improbable that the saddle
would have penetrated his rectum and/or caused injuries close to
the degree as those alleged. (Meiss Aff. ¶ 10).

[5] After the accident, the saddle was removed from the bicycle and
then put back on the bicycle at a later date.  Therefore, in
addition to questions regarding the saddle itself, there is no
information regarding whether at the time of Blake's accident
the saddle had been properly installed by the unknown third
party, at what height the saddle had been adjusted, whether the
saddle sat at an angle or was tilted, and/or whether the saddle
was securely affixed to the seat post on the bicycle.  Proper
and secure installation of a saddle on a bicycle's seat post is
essential to the safe operation of the bicycle.  (Meiss Aff. ¶
5).  This is yet another broken link in the chain of causation
and independently provides grounds for summary judgment to Haro.
See R.A. Siegel Co. v. Bowen, 246 Ga. App. 177, 539 S.E.2d 873
(2000).

The bottom line is that "[a] manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else." Id. (citation omitted). Therefore, solely by virtue of the fact that the very aspect of the bicycle alleged to have caused Blake's injuries was incorporated into the bicycle after it was sold new warrants summary judgment to Haro in this case.

### 2.  Plaintiffs' removal of the brakes from the bicycle substantially altered the bicycle and rendered it unsafe.

Plaintiffs entirely removed the brakes and/or braking system of the bicycle. Stripping the brakes from the bicycle eliminated Blake's ability to control the bicycle and in and of itself significantly altered the bicycle's original design by destroying the very component of the bicycle specifically incorporated to provide the rider with the means to avoid injury, regardless of the functioning, or nonfunctioning, of every other component on the bike. "If the product design has been independently altered, eliminated or replaced by a third party after the sale of the product, and injuries result after the alteration, those injuries cannot be the proximate result of the manufacturer's original design." Id.; see also Giordano v. Ford Motor Corp., 165 Ga. App. 644, 299 S.E.2d 897 (1983)

(holding that there can be no strict liability for a product when the injuries complained of resulted from a substantial change in the product.).  Had Blake been able to apply the brakes, it is possible that this accident and the resultant injuries would not have happened.  (Meiss Aff. ¶ 11).

Therefore, even if the bicycle as originally designed and manufactured was somehow defectively designed, which it was not, Plaintiffs' dramatic alteration of the bicycle destroys their ability to maintain a strict liability claim against Haro.

## C.   **HARO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS ASSUMED THE RISK OF INJURY.**

Haro cannot be held strictly liable to Plaintiffs as a matter of law because they assumed the risk of injury.  Wilson v. Bicycle South, Inc., 915 F.2d 1503, 1507-1508 (11th Cir. 1990).  The defense of assumption of risk is established upon showing that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Clayton v. Travis, 109 F.3d 669, 672 (11th Cir. 1997).  "`In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the

defendant is to do or leave undone.'" Tennison v. Lowndes-

Echols Association for Retarded Citizens, Inc., 209 Ga. App.

343, 343-344, 433 S.E.2d 344, 345 (1993) (citations omitted);

see also Deere & Co. v. Brooks, 250 Ga. 517, 299 S.E.2d 704

(1983); Hunt v. Harley-Davidson Motor Co., Inc., 147 Ga. App.

44, 248 S.E.2d 15 (1978).

    This consent can be "`implied from the conduct of the

plaintiff under the circumstances.'" Id. A plaintiff "`cannot

undertake to do what is obviously a dangerous thing and at the

same time avoid the responsibility for the self-assumed risk.'"

Brown v. Southern Bell Telephone & Telegraph Co., 209 Ga. App.

99, 101, 432 S.E.2d 675, 677 (1993) (citation omitted).

    In this case, summary judgment is warranted because there

can be only one conclusion drawn:  Plaintiffs assumed the risk

of Blake's injuries by using the bicycle in a substantially

altered condition.  The record is undisputed that Plaintiffs

removed the brakes from the bicycle because they were "hanging

up."  (Plaintiff's Response to Interrogatory No. 13).  In so

doing, Plaintiffs completely eliminated the very component of

the bicycle specifically incorporated to provide the rider with

the means to control the bicycle and/or avoid injury.[6]   Blake

voluntarily used the bicycle, despite knowing that the brakes

had been removed.

Even if he did not anticipate the possibility of being

injured by the saddle penetrating his rectum, recovery against

Haro is nonetheless barred.   "`[P]erfect knowledge [of the

nature and extent of the threat posed] is not necessary' for the

assumption of risk doctrine."   Clayton, 109 F.3d at 674 (holding

it can be properly inferred that plaintiff is subjectively aware

of the specific risk even where plaintiff claimed to only be

aware of general, non-specific risk associated with a certain

activity); see also Hull v. Merck & Co., Inc., 758 F.2d 1474

(11th Cir. 1985) (holding as a proper jury charge on assumption

of risk that "when a person knowingly and voluntarily takes a

risk of physical injury, the danger of which is so obvious that

the act of taking such risk in and of itself amounts to a

failure to exercise ordinary care and diligence for his own

---

[6] The removal of the brakes and/or the braking system from a
bicycle is extremely unsafe.   The ability to slow the rate at
which a bicycle is traveling and/or to stop a bicycle is vital
to the rider's ability to control the bicycle.   Also, the faster
the rate of speed at which a cyclist is traveling, the more
severe any injury suffered by the cyclist in an accident will
probably be. In order for the accident complained of in this
case to have occurred, Blake had to have lost some degree of
control over the bicycle.   (Meiss Aff. ¶ ¶ 11, 12).

.         .

safety, he cannot hold another liable for injuries proximately

caused by such action even though the injuries may be partly

attributable to the negligence of another person."); Hunt, 248

S.E.2d at 15-16 (holding plaintiff assumed risk of injury by

using motorcycle knowing it lacked crash bars).

Moreover, the manner in which Blake was using the bicycle

unequivocally demonstrates an assumption of the risk of injury.

Starting at the top of a long incline, Blake raced his bicycle,

without any means of stopping or slowing down, toward a ramp

measuring sixteen inches in height and composed of scraps of

wood his father found for the purpose of catapulting himself

into the air. (Exhibits 1 and Exhibit 5-Fig. 3 to Ford Dep.

[Figure 3 of Exhibit 5 is attached hereto and marked as Exhibit

C). No measures were taken to try to ensure a proper landing,

much less a safe one. (Id.).[7]

Blake was injured when he landed "in such a way" that the

narrow end of the seat penetrated his rectum. (Plaintiffs'

First Amended Complaint, ¶ 10). The bicycle seat did not move

---

[7]The ramp upon which Blake was jumping his bicycle at the time of
the accident was improperly constructed and unsafe.   In
particular, the ramp did not provide a sloped landing area of
any kind.   Therefore, when Blake landed on what appears in the
photographs to be a flat surface, he had to absorb all of the
force generated by that landing.   Had Blake landed on a sloped
area, it is highly unlikely that he would have been injured in
the manner described in this lawsuit, unless the saddle had been
improperly installed in a vertical position.   (Meiss Aff. ¶ 14).

20

or tip up, but remained stationary and perpendicular in its original position. (Exhibit 5 to Ford Dep.). Common sense and physics dictate that the injuries resulted from Blake's own uncontrolled operation of the bicycle causing it to rotate into a vertical position, rather than due to any defect in the bicycle. "It is not important whether he knew the precise, physical nature of the hazard presented by his 'use' of the product; it is sufficient if he is aware generally that the `use' being made of the product is dangerous." Whirlpool Corp. v. Hurlbut, 166 Ga. App. 95, 101, 303 S.E.2d 284, 288 (1983); see also Sharpnack v. Hoffinger Industries, Inc., 223 Ga. App. 883, 479 S.E.2d 435 (1996)(granting summary judgment to the pool manufacturer because there was nothing it could have done to prevent plaintiff's injuries sustained while doing a flip off of a mini-trampoline into an above ground swimming pool). It simply defies logic that Plaintiffs are seeking to attach strict liability to Haro for injuries arising from Blake's daredevil stunt performed without regard for his safety and certainly without any sort of precautions taken for a safe landing.

**D.**   **HARO IS ENTITLED TO SUMMARY JUDGMENT UNDER RISK-UTILITY ANALYSIS.**

Strict liability centers on the condition of the product when it was sold new. In this case, the question of whether there was

21

a design defect in the bicycle should not even be reached because of the two significant post-sale modifications (about which the parties are aware) that were made to the bicycle.  One of which, as discussed, incorporated the very defect upon which Plaintiffs' entire Complaint is based, and the other removed the very component of the bicycle incorporated into its design for the purpose of preventing accidents and making riding the bicycle safe.  As such, to the extent that it can be said that design defects in the bicycle at the time of the accident caused Plaintiffs' injuries, which it cannot, as a matter of law Haro cannot be subject to strict liability for them even if it had been the actual manufacturer of the bicycle.  Under the facts of this case, the risk-utility analysis used by Georgia courts to determine the presence of an actionable product defect is never even reached.  See Banks v. ICI Americas, Inc., 264 Ga. 732, 450 S.E.2d 671 (1994).

Moreover, even if the saddle originally sold with the bicycle had been involved in Blake's accident, Haro still cannot be subject to strict liability.  The circumstances of Blake's injury are freakish.  Haro had never heard of an accident or an injury such as the ones involved in this case and it had no other reason to question the design of the saddle or any other component part incorporated into the bicycle.  (Ford Aff. ¶ 13).

22

Indeed, Haro had no knowledge or notice of a defect in any of its
bicycles, or any component parts thereof.  [Ford Dep., pp. 44-
45; Ford Aff. ¶ 13).  Under these circumstances, it was "entitled
to assume that the manufacturer [of the saddle] ha[d] done its
duty in properly constructing the equipment and in not placing
on the market a defective" product.  Hester v. Human, 439 S.E.2d
50, 53 (Ga. App. 1993) (finding retailer that merely sold
equipment was not liable where no notice of defect or injury in
product).  The fact that a product is capable of producing an
injury does not render it defective.  Ream Tool Co. v. Newton,
209 Ga. App. 226, 228, 433 S.E.2d 67, 71 (1993).

Finally, as a matter of law, Plaintiffs cannot establish
that the bicycle was defectively designed even if the risk-
utility analysis is implemented.  Under this standard, a design
defect is only present when the risks associated with the use of
a product outweigh the utility of the product as designed.  See
Banks, 264 Ga. 732, 450 S.E.2d 671.  In Banks, the Georgia
Supreme Court emphasized that there is no finite set of factors
to be weighed in conjunction with this balancing test; rather,
consideration might be given to any number of factors including
whether the manufacturer acted reasonably in choosing a
particular product design, given the probability and seriousness
of the risk posed by the design; the usefulness of the product

in that condition; the state of the art at the time of the manufacturing; compliance with governmental standards; the feasibility of alternative designs and the costs of improved designs. Id. at 734, 450 S.E.2d at 673.

Some form of saddle is necessary on a bicycle. Indeed, the saddle is the only component preventing injuries such as those suffered by Blake from being commonplace. All bicycle saddles share the same general shape in that the saddle will be purposefully designed to be narrow toward the front end. (Meiss Aff. ¶ 7). This configuration is necessary in order for the cyclist to be able to pedal and/or to do so without interference. (Id.). This configuration also assists in providing proper support for the rider when seated on the saddle. No alternative exists. There are no square bicycle seats because such a design would make pedaling the bicycle extraordinarily and unnecessarily difficult. The fact that there are some saddles that are designed with certain types of bicycles and/or certain types of riders in mind does not render any one shape defective.

Lastly, Haro could not reasonably be expected to foresee the probable consequences of what might happen if the brakes on a Haro bicycle are removed and the rider races the bicycle down a slope toward and onto a steep ramp without a landing area. See Timmons

24

v. Ford Motor Company, 982 F.Supp. 1475 (S.D. Ga. 1997) (holding that while reasonable to expect a car manufacturer to foresee the occurrence of collisions, it is not reasonable to expect it to foresee the probable consequences of a collision when the car is traveling at speeds in excess of 100 miles per hour and protect against those consequences especially since car manufacturers cannot reliably test at such collision speeds).

A manufacturer is under no obligation to make a machine accident proof or foolproof." Ream Tool Co. v. Newton, 433 S.E.2d 67, 71 (Ga. App. 1993). There is nothing Haro could have done, much less have been required to do, to prevent Blake's accident as a matter of law. Summary judgment is therefore warranted.

## V.   CONCLUSION

For the foregoing reasons, Defendant Haro Bicycle's Motion for Summary Judgment should be granted.

Respectfully Submitted,

PURSLEY LOWERY MEEKS LLP

BY

John R. Lowery
Georgia Bar No. 460175
SunTrust Plaza – Suite 4540     Audrey R. Kohn
303 Peachtree Street, N.E.      Georgia Bar No. 591485
Atlanta, Georgia 30308
(404) 880-7180 (telephone)      Attorneys for Defendant
(404) 880-7199 (facsimile)      Haro Bicycle Corporation

25





# EXHIBIT / ATTACHMENT

## A

(To be scanned in place of tab)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DEBBIE MITCHELL and STEVEN MITCHELL, individually and As parents of and next friends of STEVEN BLAKE MITCHELL, MITCHELL,<br><br>     Plaintiffs,<br><br>v.<br><br>HARO BICYCLE CORPORATION and VELO ENTERPRISE COMPANY, LTD.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br>NO.  1:00CV2096-BBM |

### AFFIDAVIT OF JIM FORD

COMES NOW before the undersigned officer duly authorized to administer oaths, JIM FORD, who after being duly sworn deposes on oath as follows:

1.   I am over the age of majority, am mentally competent, suffer from no legal disability.  I am otherwise competent to make this Affidavit, which I make in support of Haro Bicycle Corporation's ("Haro") Motion for Summary Judgment and for other purposes relating to the above-captioned civil action.

2.   I have served as President and CEO of Haro for nine years.

3.    Haro is a well-recognized name in the bicycle industry and has been in the business of bicycle distribution since 1978.

4.    Haro is a wholesale distributor of bicycles that bear its name and/or logo.  Haro does not manufacture, assemble or sell by direct retail any bicycles or any component bicycle parts.

5.    As a distributor, Haro selects the component parts for a given bicycle model, and those component parts are manufactured and assembled by numerous other companies.

6.    Haro does not control the manufacture or assembling of its bicycles.  Haro had no involvement whatsoever in the design of the Velo saddle at issue in this litigation.  Haro does not modify, assemble or package the bicycles prior to transfer to the retailers or dealers.

7.    The bicycles are received unassembled in parts from the manufacturer and are subsequently assembled by another company at Haro's direction.  The bicycles are assembled according to written specifications provided by Haro.  Haro's name and logos are placed on the bicycle, or its components, by either the manufacturer of

the particular component part, or the bicycle assembler once the bicycle is complete and ready for sale.

8.   When the bicycles are completely assembled, they are shipped to Haro in individual boxes to either California or a public warehouse in New Jersey used by other companies and/or individuals for storage as well.  Haro does not open the box. From these locations, the bicycles are shipped directly to retail sellers or dealers in accordance with their orders.

9.   The bicycle involved in this lawsuit is a 1994 Shredder that was manufactured and assembled by a Taiwanese company in 1993 or 1994.  The original design incorporated a seat manufactured by Velo, model VL100.

10.  The 1994 Shredder is a "freestyle" bicycle, adapted for doing different tricks, including jumping ramps as opposed to a "BMX" bicycle, which is generally used in speed related competitions.  The seats on freestyle bicycles and on BMX bicycles differ.  The seats tend to be more narrow on the BMX bikes and wider on the freestyle bikes due to the different uses.

11.  The seat used on the bicycle when Plaintiff Steven Blake Mitchell was injured is a later model, VL199, which also was

manufactured by Velo.   The VL199 model saddle was never incorporated into the original 1994 Shredder design.

12.   The VL199 model is very different in width and shape from the VL100 model and the saddles are used for different classes of bicycles.  The VL100 model is specifically designed and marked by Velo as a saddle for freestyle bicycles.   The VL199 model is no longer used in Haro bicycles only because of evolution in the design of the seat, which is based upon considerations such as aesthetics and customer preference.

13.   As many as ten thousand 1994 Shredder model bicycles were sold in the United States.  Haro has never received notice of any claims or lawsuits involving the 1994 Shredder.  Haro has never received notice that any Haro bicycle, or any bicycle, caused injuries similar to those alleged by Plaintiffs.   Haro has never received notice of any claims or lawsuits involving any of its bicycles, or any other company's bicycle models, consisting of allegations similar to those made by Plaintiffs in this case.

14.   Consumer Product Safety Commission has never instigated any investigation or recall of its bicycles.



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)



















EXHIBIT ATTACHMENT



(To be scanned in place of tab)



FIG. 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DEBBIE MITCHELL and STEVEN MITCHELL, individually and As parents of and next friends of STEVEN BLAKE MITCHELL, ) ) ) ) | |
| Plaintiffs, ) | CIVIL ACTION FILE NO. 1:00CV2096-BBM |
| v. ) | |
| HARO BICYCLE CORPORATION, ) | |
| Defendant. ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served counsel for the opposing party with a copy of the within and foregoing **Brief In Support of The Defendant Haro Bicycle Corporation's Motion for Summary Judgment** by depositing a copy of same in the United States mail in an envelope properly addressed to the following, with adequate postage thereon to ensure proper delivery:

> Wade K. Copeland, Esquire
> Ashley Sexton, Esquire
> Carlock, Copeland, Semler & Stair, LLP
> 2600 Marquis Two Tower
> 285 Peachtree Center Avenue
> Atlanta, Georgia 30303-1235

This the ____ day of February, 2003.

BY: _____

SunTrust Plaza - Suite 4540        Audrey R. Kohn
303 Peachtree Street, N.E.         Georgia Bar No. 591485
Atlanta, Georgia 30308
(404) 880-7180 (telephone)         Attorneys for Defendant
(404) 880-7199 (facsimile)         *Haro Bicycle Corpora*

# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB -6 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

DEBBIE MITCHELL and STEVEN )
MITCHELL, individually and )
As parents of and next friends )
of STEVEN BLAKE MITCHELL, )
                  )   CIVIL ACTION FILE
                  )   NO.  1:00CV2096-BBM
    Plaintiffs,     )
                  )
v.                )
                  )
HARO BICYCLE CORPORATION, )
                  )
    Defendant.     )
                  )

## DEFENDANT HARO BICYCLE CORPORATION'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE EXIST NO GENIUNE ISSUES TO BE TRIED

COMES NOW Defendant Haro Bicycle Corporation ("Haro") and submits this Statement of Material Facts For Which There Exist No Geniune Issues To Be Tried, showing the Court as follows:

1.

Plaintiff Steven Blake Mitchell ("Blake") was injured on or about February 25, 1999 while he "jumped" his bicycle on a sixteen-inch tall ramp constructed by his father out of plywood and two-by-fours.  (Plaintiffs' First Amended Complaint, ¶ 6; (Plaintiffs' Responses to Haro's First Set of Continuing Interrogatories [hereinafter "Plaintiffs' Interrogatory Responses"] No. 14).

75

2.

Just before he sustained these injuries, Blake was riding his bicycle at approximately ten miles per hour down a slope toward and up the ramp for the purpose of catapulting his bicycle and his person high into the air.  As he began the jump, Blake was in a standing position with both feet on the pedals of the bicycle. (Plaintiffs' Response to Interrogatory Nos. 14 and 15).

3.

The peak of the ramp reached sixteen inches from the ground.  The ramp did not provide a sloped surface for landing. (Plaintiffs' Interrogatory Responses No. 13; Exhibit 1 to Jim Ford's Deposition, which is attached to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment and marked as Exhibit B.).

4.

Blake landed "in such a way" that the nose or narrow end of the saddle penetrated his rectum.  (Plaintiffs' First Amended Complaint, ¶ 10).  The bicycle seat did not move during the accident, but remained stationary in its original perpendicular position.  (Exhibit 5 to the Deposition of Jim Ford).

5.

The bicycle was purchased in 1998 by Blake's grandfather at the Lithia Springs Fleamarket and given to Blake as a gift.

2

(Plaintiffs' Responses to Interrogatories, No. 12).  At the time
of purchase, the bicycle was "used" and in very poor repair.
(Id., Response to Interrogatory No. 13).

6.

The bicycle purchased and used by Blake was a 1994 Shredder
model bicycle manufactured and assembled by Kenstone.  (Deposition
of Jim Ford ["Ford Dep."] p. 22, 46-47).  The particular decals
on the bicycle were used only on the 1994 model of the bicycle.
(Id., p. 22, 66).  The 1994 Shredder is a "freestyle" bicycle,
adapted for doing different tricks, including jumping ramps as
opposed to a "BMX" bicycle, which is generally used in speed-
related competitions.  (Id., pp. 29, 31).  The original design
and assembly of the 1994 Shredder incorporated the VL100 model
seat, which was designed and manufactured by Velo.  (Id., p.
48).  This was the only kind of saddle model used on the 1994
Shredder model bicycle.  (Id.).

7.

The seat that allegedly "caused" Blake's injuries was
different from the original seat incorporated into the bicycle by
the manufacturer prior to distribution.  (Id.).  The seat used on
Blake's bicycle was a BMX model saddle, model VL199.  (Id., pp.
52-54).  This particular Velo saddle was never incorporated into

3

the design of the 1994 Shredder.  (Id.).  The VL199 model is different in width and shape from the original seat which was intended by the manufacturer for the bicycle as part of its design and assembly.  (Id., p. 48, 53-54; Exhibit 5 to Ford Dep.).

8.

It is not known how many people owned the bicycle prior to the grandfather's purchase.  Prior to Plaintiffs' purchase of the bicycle, the original VL100 seat was replaced with the VL199 model.  (Ford Dep., p. 48, 52-54; Exhibit 5 to Ford Dep.).

9.

After purchase, Plaintiffs further modified the bicycle by removing the bicycle's brakes entirely because the brakes were "hanging up."  (Plaintiffs' Response to Interrogatory No. 13).  The brakes were not repaired and no new brakes were installed before Blake was injured.

10.

Haro is a well-recognized name in the bicycle industry and has been in the business of bicycle distribution since 1978.  (Affidavit of Jim Ford ["Ford Aff."] ¶ 3).  Haro is not and has never been a manufacturer, assembler or retailer of the bicycle or the seat or any other component bicycle parts.  (Ford Dep., p.

4

38).  Haro functions solely as a wholesale distributor of bicycles
that bear its name and/or logo.  (Id., p. 13-14).

11.

As a distributor, Haro selects the component parts for a
given bicycle model, and those component parts are manufactured by
numerous other companies.  (Id., pp. 13-14, 27-28).  Haro does not
modify, assemble or package the bicycles prior to transfer to the
retailer.  (Id., pp. 38, 41-42; Ford Aff. ¶ ¶ 5, 7).  Instead, the
bicycles are received unassembled from the parts manufacturer, and
are subsequently assembled according to a written specifications
by another company.  (Ford Dep., p. 57).  Haro's name and logos
are placed on the bicycle, or its components, by either the
manufacturer of the particular component part, or the bicycle
assembler once the bicycle is complete and ready for sale.  (Ford
Aff. ¶ 7).

12.

Haro is strictly a wholesale distributor of Haro Bicycles, a
particular proprietary brand of bicycle.  (Ford Aff. ¶ ¶ 5, 7).

13.

When the bicycles are completely assembled, they are sent in
individual boxes to a location in California or to a warehouse in
New Jersey.  (Ford Dep., p. 55). From these locations, the
bicycles are shipped to dealers in accordance with their orders.

5

(Id.). Neither Haro, nor any purported representative and/or
agent of Haro, opens the box. In fact, the box in which each
bicycle is shipped from Taiwan is not opened until, presumably,
the bicycle reaches the dealer. (Id., p. 55). If the bicycle
contained in the box does not exactly match the specifications of
the bicycle in Haro's catalogue, the bicycle is returned to Haro.
(Id., p. 58).

<div align="center">14.</div>

Prior to this lawsuit, Haro received no notice of any
claims involving the 1994 Shredder that are similar to those
made by Plaintiffs here. (Ford Dep., pp. 44-46; Ford Aff. ¶
13). Haro is not aware of other any similar claims made against
any other bicycle manufacturer. (Id.).

Respectfully submitted this the 6th day of February, 2003.

PURSLEY LOWERY MEEKS LLP

BY _____
                John R. Lowery
                Georgia Bar No. 460175
SunTrust Plaza – Suite 4540    Audrey R. Kohn
303 Peachtree Street, N.E.     Georgia Bar No. 591485
Atlanta, Georgia 30308
(404) 880-7180 (telephone)     Attorneys for Defendant
(404) 880-7199 (facsimile)     Haro Bicycle Corporation

<div align="center">6</div>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DEBBIE MITCHELL and STEVEN MITCHELL, individually and As parents of and next friends of STEVEN BLAKE MITCHELL, ) ) ) ) | CIVIL ACTION FILE NO.  1:00CV2096-BBM |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HARO BICYCLE CORPORATION, ) | |
| ) | |
| Defendant. ) ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served counsel for the opposing party with a copy of the within and foregoing **Defendant Haro Bicycle Corporation's Statement of Material Fact For Which There Exist No Genuine Issues To Be Tried** by depositing a copy of same in the United States mail in an envelope properly addressed to the following, with adequate postage thereon to ensure proper delivery:

                    Wade K. Copeland, Esquire
                    Ashley Sexton, Esquire
                    Carlock, Copeland, Semler & Stair, LLP
                    2600 Marquis Two Tower
                    285 Peachtree Center Avenue
                    Atlanta, Georgia  30303-1235

This the 6th day of February, 2003.

BY: _____

SunTrust Plaza – Suite 4540       Audrey R. Kohn
303 Peachtree Street, N.E.        Georgia Bar No. 591485
Atlanta, Georgia 30308
(404) 880-7180 (telephone)        Attorneys for Defendant
(404) 880-7199 (facsimile)        Haro Bicycle Corporation

2