**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.D.C. Atlanta

FEB 2 6 2003

LUTHER _____ Clerk
By: _____
Deputy Clerk

DEBBIE MITCHELL and STEVE )
MITCHELL, Individually and as )
Parents and Next Friends of )
STEVEN BLAKE MITCHELL, )
 )
    Plaintiffs, )
 )
vs. )    CIVIL ACTION 1:00CV-2096-BBM
 )
HARO BICYCLE CORPORATION, )
a California Corporation, and )
VELO ENTERPRISE COMPANY, LTD., )
 )
    Defendants. )

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

    The foregoing matter is before the Court on the motion of Haro Bicycle

Corporation for summary judgment.   Because jury issues exist as to each and every

argument made by Defendant in its motion, summary judgment in this case would be

improper.

## I. STATEMENT OF FACTS

    On February 25, 1999, Blake Mitchell, a thirteen year old boy, was riding his

bicycle in his front yard. (Affidavit of Steve Mitchell, ¶3-4).  Blake was riding the

bicycle up and down a small ramp constructed by his father. (Affidavit of Steve

Mitchell, ¶4).  According to Haro Bicycle Corporation, riding the bicycle in this

manner is consistent with the purpose for which the bicycle was constructed and

intended.  (Deposition of James Ford, pp. 58-59).  As Blake landed to complete one of his jumps, the bicycle became positioned in such a way that the nose of the saddle penetrated Blake's clothing and penetrated his rectum causing severe internal injury to his bladder and colon.  (Affidavit of Steve Mitchell, ¶5).  At no time during the jump did Blake ever need to apply his brakes nor did he ever attempt to do so.  (Affidavit of Steve Mitchell, ¶6).  As a result of this severe injury, Blake underwent a lengthy hospitalization including surgery and a colostomy.  Blake's doctors are still unsure of whether he may be infertile or have suffered other permanent injuries as a result of the incident.

The bicycle that injured Blake was designed, manufactured and distributed by Haro Bicycle Corporation.  Haro Bicycle Corporation ("Haro") is a self-proclaimed "wholesale distributor of a proprietary brand that is [its] own."  (Deposition of James Ford, p. 13; ll. 11-12).  Haro's target market is boys of the median age of 14-15.  (Deposition of James Ford, p. 32).  Haro not only markets and distributes bicycles, but also designs them.  Haro conducts market research and carefully selects component parts for bicycle designs from various manufacturers based on, among other factors, what its market research has demonstrated that its customers want.  (Deposition of James Ford, p. 14).  Haro uses a computer system to specify each and every component part it wishes to incorporate into a finished bicycle, to order the parts and to direct them to be shipped to an assembly plant where the final bicycle is assembled according to these specifications.  (Deposition of Jim Ford, pp. 34-37).  Haro even

takes an active role in design of the specific component parts if the part that it wishes to select is not available or if it has specific safety or functional needs for a part. (Deposition of Jim Ford, p. 39-40). It may recommend a certain shape or material for the production of the parts. (Deposition of Jim Ford, p. 41). Haro has a direct relationship with the component parts manufacturer and the assembly plant. (Deposition of Jim Ford, pp. 38-42).

Additionally, Haro performs informal testing on its bicycle designs by having athletes ride the bicycles and provide feedback. (Deposition of Jim Ford, p. 42). It also conducts more formal testing from time to time. (Deposition of Jim Ford, pp. 42-44). Haro admits that it does more than just pick out parts and stick them on a bike, but rather it has an active role in designing the final appearance of the bicycle. (Deposition of Jim Ford, p. 68).

According to Haro, the bicycle Blake was riding was a Haro "Shredder" model freestyle bicycle, likely manufactured in 1994. (Deposition of Jim Ford, p. 22; l. 18 & p. 29). The bicycle bears the Haro brand name on its seat/saddle as well as on its frame. Haro's brand name was placed on the saddle and frame at Haro's direction. (Deposition of Jim Ford, p. 47). This particular bicycle, as well as the one purchased for Blake's brother, features a very sharp, needle-nosed saddle which has been identified by Haro as being a VL 199 model saddle.[1] (Affidavit of Eugene A. Slone, ¶ 4; Deposition of Jim Ford, p. 53; ll. 2-3). This saddle is unsafe and the incorporation

---

[1] Although Haro first testified that the saddle involved was the VL 109, it later revised its testimony and stated that the saddle was the VL 199 and that its prior testimony pertained to the VL 199 saddle.

of the saddle into the overall design of the bicycle resulted in a negligent bicycle design. (Affidavit of Eugene A. Sloane, ¶ 3-4). The saddle is constructed of very hard plastic that requires 80 pounds of pressure to a finger-nail sized area in order to depress the saddle. (Affidavit of Eugene A. Sloane, ¶ 4). Other saddles available on the market require only 18 pounds of force to the same sized area. (Affidavit of Eugene A. Sloane, ¶ 5). Other saddles that are equally useful and cost effective were available to Haro at the time the VL199 was incorporated into its design. (Affidavit of Eugene A. Slone, ¶ 7).

Haro admits that the same saddle used on the bicycle that injured Blake was also used on the Shredder bicycle between 1993 and 1995. (Deposition of Jim Ford, p. 52-54). Although, Haro contends that the VL199 saddle which caused Blake's injury was not the original saddle on the particular Shredder bicycle ridden by Blake Mitchell, Haro has refused to produce any documents or specification sheets demonstrating what sort of saddle was originally on Blake's bicycle, despite requests for such documents by Plaintiffs. (See, Haro's Responses to Plaintiff's Second Request for Production of Documents, copy attached). At deposition, Haro testified that it could not be certain that the VL 199 saddle was never incorporated into Shredder bicycles manufactured in 1994. (Deposition of James Ford, p. 49). The bicycle that injured Blake had been purchased by Blake's grandfather from the Lithia Springs flea market as a gift. (Affidavit of Steve Mitchell, ¶8). At about the same time Blake's grandfather purchased the bicycle for Blake, he purchased a similar bicycle with an identical saddle

from the Rockmart Auction for Blake's brother. (Affidavit of Steve Mitchell, ¶8).  The Mitchell's never exchanged the saddle on Blake's bicycle, and the bicycle was essentially in the same condition in which they bought it as it was at the time of the accident, except for the fact that Blake had removed the brakes on the bicycle because they were broken.  (Affidavit of Steve Mitchell, ¶7).

## II. ARGUMENT AND CITATION OF AUTHORITY

As a preliminary matter, the Mitchell's strongly object to Haro's attempted use of the affidavit of a purported expert, Carl Meiss, III, who never disclosed during discovery.   Despite being required to disclose such an expert by the Court's Mandatory Interrogatory number 6, and despite the Plaintiffs' request for the identity of expert witnesses in interrogatory number 48 of their first interrogatories served on January 30, 2001, Defendant first disclosed this expert on the day that it filed the present motion.  This case has been ongoing for more than two years, and Haro has had ample time to timely disclose any expert witnesses and make them available for deposition.  Because Mr. Meiss testimony should be excluded from trial, it cannot be used to support Defendant's summary judgment.

### A. Haro Bicycle Corporation is a manufacturer for the purposes of the Georgia Strict Liability Statute.

Haro argues that it cannot be held strictly liable as a manufacturer under O.C.G.A. § 51-1-11.  Haro urges the Court to hold that, despite Haro's active role in designing, manufacturing and assembly of its bicycles, including the bicycle that injured Blake Mitchell, it is merely a seller of the product.  There is ample evidence to

- 5 -

establish Haro's active role in the design manufacture of these bicycles and certainly ample evidence to create a triable issue of fact on this element of Plaintiffs' claim.

In Nelson v. CM City, Inc., 463 SE 2d 902, 218 Ga. App. 850 (1995), the Georgia Court of Appeals reversed the grant of summary judgment to a manufacturer under circumstances that are very similar to those of the present case. The Court of Appeals held that a corporation that sells a product and has input or is actively involved in the conception, design or specification of the product is a manufacturer under O.C.G.A. § 51-1-11. In Nelson Court found that the defendant, Curtis Mathes, was a manufacturer for the purpose of the statute where it conceived the idea to have a television built and assembled into a cabinet and where it presented its specifications to others and formulated a plan to assemble the product according to its specifications, even though the television was actually assembled by a another party. The Court held that where another party assembles the product but does so according to the direction, specifications and formulations of the defendant, the defendant cannot escape liability. The Nelson Court distinguished Alltrade, Inc. v. McDonald, 445 SE2d 856, 213 Ga. App. 758 (1994), cited by Haro, holding that in Alltrade, the defendant had merely placed its label on a product designed and manufactured by another. Nelson at 903.

The other cases relied on by Haro are similarly distinguishable. In Schneider v. Tri Star International, Inc., 476 SE2d 846, 223 Ga. App. 85 (1997), the Court of Appeals held that where a company merely specified the appearance of pliers that it wanted the third party to procure for it for resale, but did not fabricate, assemble,

construct or create the pliers and where it had no direct business relationship with the actual manufacturers, it could not be held liable as a manufacturer.

Haro's reliance on Snow v. Bellamy Mfg & Repair, et al, 1995 WL 867859, is also misplaced.  In Snow, the trial court held that, under Georgia law, one who has an active role in the production, design or assembly of products and places them in the stream of commerce is a manufacturer for the purpose of O.C.G.A. §  51-1-11.1. However, the trial court in Snow, found that the defendant did not have an active role in the product design or manufacture and was merely the lessor of a custom designed trailer used on the set of a movie production.

In the present case, there is ample evidence that Haro had an active role in the design, production, assembly or manufacture of the bicycles it placed into the stream of commerce. Haro had a direct relationship with the component part manufacturers as well as with the assembly plant that assembled the final products.  Haro specified each component part of the final product, using a computer-generated specification sheet to dictate every detail of the bicycle's final appearance.  Haro also had design input into the manufacture of specific component parts of the bicycle.  It specified the sorts of materials used in those component parts, it specified shapes of its component parts and it specified the aesthetics of the component parts.  Haro also instructed its name to be placed on the bicycle frames as well as the bicycle saddles.  Furthermroe, Haro tests its bicycles both formally and informally and receives feedback from the athletes who test the bicycles in order to conduct market research for the design of its bicycles.  Haro

admits that it does more than just pick out parts and stick them on a bike and that it has an active role in designing the final appearance of the bicycles it distributes.

### B.   The Bicycle That Injured Blake was In Substantially the Same Condition in Which it Was Sold When it Was New.

Haro next contends that there is no triable issue of fact as to whether the condition of the bicycle proximately caused Plaintiff's injury.

### 1.   There is a triable issue of fact as to whether Blake's injuries were caused by the original saddle with which the bicycle was sold.

Haro seeks to avoid liability in the present case by arguing that the bicycle saddle that bears its name and that came with the bicycle purchased for Blake by his grandfather was not the original saddle on the bicycle Blake was riding when he was injured. Haro claims that it is "undisputed" that the saddle on which Blake was injured was not the original saddle on the bicycle Blake was riding at the time of his injuries. This is untrue. Plaintiffs contend that the saddle was the original saddle on the bicycle, and this contention is supported by the evidence.

Haro's president, who never inspected the actual bicycle involved in this case, has stated that the bicycle was a 1994 Shredder bicycle. He has also testified that during the years 1993 to 1995, saddles similar to the one causing Blake's injuries were incorporated into the design of the Shredder model bicycle. He has testified that he cannot be certain that such a saddle was not the original saddle on the bicycle Blake was riding. Furthermore, although Plaintiffs have requested that Haro produce the specification sheets for the 1994 Shredder bicycle in order to determine what sort of

saddle was specified for the bicycle, Haro has refused to produce such documents. (See, Plaintiff's Second Request for Production of Documents and Haro's Responses). Haro has produced no evidence other than the self-serving affidavit of James Ford that is contradictory to Mr. Ford's deposition testimony in order to establish that the saddle they contend was on the bicycle Blake was riding was not the original saddle. The Court should disregard such an Affidavit in the consideration of the present motion. (See, Tippens v. Celotex Corp., 805 F.2d 949 (11th Cir. 1986).

Moreover, the saddle that injured Blake was the saddle on the bicycle when it was purchased. The Mitchell's did not exchange or alter the saddle in any way before Blake was injured on the bicycle. Furthermore, Blake's grandfather purchased an similar bicycle with an identical saddle from a completely different source for Blake's brother, Eric.    This is all evidence from which a jury could reasonably conclude that the saddle injuring Blake was the original saddle.

## 2. The Removal of the Brakes Did Not Contribute to Blake's Injuries

Plaintiff's next argument is that the fact that Blake Mitchell removed the brakes from his bicycle cuts off any liability on the part of Haro for the negligent incorporation of a dangerously defective bicycle saddle. This argument ignores the fact that the brakes or lack of brakes in no way caused or contributed to the incident causing Blake's injuries. Haro argues that had Blake been able to apply brakes, it is "possible" that the accident would not have happened. Haro bases this statement on the opinion of Mr. Meiss, who as discussed above, was an expert witness who was not

disclosed by Haro until long after the discovery period expired, despite Haro's obligation to disclose its expert witnesses to this Court's mandatory interrogatory responses, and its obligation to disclose  them in responses to the Mitchells' first interrogatories.

Furthermore, the allegations in this case are that as Blake was jumping over a ramp, the bicycle became positioned under him in such a way that as he landed, the bicycle saddle penetrated his clothing, entered his rectum and caused severe internal injuries.  There is no evidence whatsoever that inability to brake caused or aggravated these injuries.  The testimony of Blake's father who witnessed the incident is that the ability to brake was not a factor in Blake's injuries.

### C.  Whether Blake Assumed the Risk of His Injuries is a Jury Issue.

Whether a plaintiff assumes the risk of his injuries is generally a jury question and issues of assumption of the risk are ordinarily not susceptible to summary judgment.  Tennison v. Lowndes-Echols Association for Retarded Children, 209 Ga. App. 343. (1993).  Haro argues that Blake, a thirteen year old boy, knowingly assumed the risk of a colostomy and possible permanent infertility when he rode his Haro bicycle over ramps.  Such an argument by Haro, which admittedly targets boys of median age 14-15 for sale of its bicycles, is ludicrous, especially in light of Haro's own contention that it was not aware of any such risk.

Haro also argues that riding the bicycle with the brakes disabled is extremely "unsafe."  Again this ignores the fact that the inability to brake played no role

whatsoever in Blake's injuries.  Most importantly, Haro's president, James Ford, has testified that the method and manner in which Blake was riding the bicycle was consistent with the intention and design of the bicycle.

### D.  Whether the Saddle Injuring Blake was Defectively Designed is the Central Jury Issue of this Case.

Haro claims that this Court is authorized to grant summary judgment on what is the central jury issue in this case: whether the product that injured Blake was defectively designed.  Haro contends that because it had no actual notice of the danger of the bicycle saddle, it cannot be liable for the defective design of the saddle.  This blatantly contradicts its own argument that Blake, a thirteen year old boy, was knowingly aware of and assumed the risk of the danger of the bicycle saddle.

In support of its argument, Haro cites a case that purportedly holds that a mere seller of a defective product cannot be liable where there is no notice of the defect of a product.  As established above, Haro is far more than a mere retailer of bicycles.  It actively designs not only the bicycles its sells but the component parts that go into the bicycles.

Haro also claims that as a matter of law, the design of the bicycle saddle and the bicycle itself meet the risk-utility analysis required of manufacturers in Georgia.  Once again, Haro relies on testimony contained in an affidavit obtained from a Mr. Meiss, the expert whom it disclosed on the same day it filed the present motion.  Even if Mr. Meiss' affidavit were admissible evidence, it is vehemently contradicted by the

Mitchell's bicycle safety and design expert, Eugene A. Sloane.  Mr. Sloane has testified that the bicycle saddle on which Blake was riding was not only narrow and "needle-nosed" but was constructed of a plastic that is so hard that it requires 80 pounds of downward pressure on an area the size of a fingernail n order to depress the saddle.  Other saddles on the market require only 18 pounds of force to compress the saddle.  According to Mr. Sloane, there is little or no utility to having such a hard, unpadded bicycle saddle and when much safer, equally useful and equally cost effective saddle alternatives were available to Haro at the time it selected this particular saddle to incorporate into its bicycle.

### III.  CONCLUSION

Because genuine issues of material fact exist as to each and every one of the issues argued by Defendant, Defendant's motion for summary judgment should be denied, and these issues should be decided by a jury.

This 26th day of February, 2003.

CARLOCK, COPELAND, SEMLER
& STAIR, LLP

BY:   **WADE K. COPELAND**
      WADE K. COPELAND
      State Bar #186862

BY:   **ASHLEY E. SEXTON**
      ASHLEY E. SEXTON
      State Bar #646425
      Attorneys for Plaintiffs

P.O. Box 56887
Atlanta, Georgia 30343-0887

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEBBIE MITCHELL and STEVE       :
MITCHELL, Individually and as
Parents and Next Friends of         :
STEVEN BLAKE MITCHELL,
                                 :
      Plaintiffs,
                                 :
vs.                           CIVIL ACTION 1:00CV-2096-BBM

HARO BICYCLE CORPORATION,     :
a California Corporation,
                                 :
         Defendants/Third-Party
         Plaintiff.                   :

## <u>AFFIDAVIT OF JESSE STEVEN MITCHELL</u>

PERSONALLY APPEARED BEFORE ME, the undersigned officer duly authorized

by law to administer oaths, JESSE STEVEN MITCHELL, who, having been duly sworn,

deposes and says the following:

1.

I am more than eighteen years of age and competent to testify and suffer from no legal

disability. I am competent to make this Affidavit in opposition to Defendant Haro Bicycle

Corporation's Motion for Summary Judgment.

2.

I am the father and legal guardian of Steven Blake Mitchell, a minor child and Plaintiff in this action. I was present at the time Blake was injured riding his Haro Shredder model bicycle and this Affidavit is based on my personal knowledge.

3.

On February 25, 1999, Blake was riding his Haro Shredder bicycle in the front yard of our family's house.

4.

Blake was riding the bicycle over ramps that I had constructed of plywood and two-by-fours. True and correct photographs of the ramps as they were set up by me appear in the photograph attached to this Affidavit. As Blake approached the ramp, the speed which he was traveling never exceeded 10 miles per hour. As he rode up the ramp, his speed decreased and as he landed on the ground he was able to safely stop in the area in the yard where he was riding the bicycle. He was not riding the bicycle on the street at the time of the incident, and he had ample room in the yard in order to safely stop the bicycle upon completing each jump.

5.

While I was watching Blake jump over the ramp, on February 25, 1999, the entire bicycle became perpendicular to the ground so that the seat became positioned in such a way that as Blake landed on the ground after completing his jump, the bicycle seat penetrated his clothing, entered into his body and caused severe internal injuries.

6.

The fact that Blake's bicycle had no brakes on it in no way played a role in Blake's injuries.

7.

The bicycle saddle that was on Blake's bicycle at the time he was injured was the original saddle present on the bicycle at the time it was purchased for Blake. We never exchanged or altered the saddle in any way from the time it was purchased for Blake.

8.

Blake's grandfather who had purchased Blake's bicycle at Lithia Springs Flea Market, also purchased a similar bicycle for Blake's brother, Eric. The bicycle purchased for Eric was purchased at the Rockmart auction. This bicycle had a saddle identical to that on Blake's bicycle..

FURTHER AFFIANT SAYETH NOT.

*Jesse Steven Mitchell*

JESSE STEVEN MITCHELL

Sworn to and subscribed before me this
25 day of _Feb_____ 2003.

_____
NOTARY

JUDITH C. SYCHAR
NOTARY
EXP. JULY 11, 2004
PUBLIC
COBB COUNTY, GEORGIA

1616972v1

**STATE OF ILLINOIS**

**COUNTY OF COOK**

## AFFIDAVIT OF EUGENE A. SLOANE

PERSONALLY APPEARED BEFORE ME, the undersigned officer duly authorized by law to administer oaths, Eugene A. Sloane who, having been duly sworn, deposes and says the following:

1.

I am more than eighteen (18) years of age and competent and suffer from no legal disability. I am competent to make this Affidavit for use in opposition to Defendant Haro Bicycle Corporation's motion for summary judgment.

2.

Attached hereto is a true and correct copy of my curriculum vitae, detailing my experience and training as an expert in the field of bicycle safety, repair and design. I am qualified as an expert in these fields and my opinions are based on my expertise as well as on my inspection of the bicycle giving rise to the present case. The bicycle I examined has been identified by Haro as a Shredder model bicycle, and the seat I inspected has been identified as a VL199 saddle. In addition to examining the bicycle, I have tested the saddle using a Chatillon calibrated force gauge. I have also examined the clothing and shoes worn by Blake Mitchell at the time of the incident and photographs and measurements of the ramp on which he was jumping at the time of the incident.

3.

Based on my review, it is my opinion that the bicycle was defectively designed. In arriving at this opinion, I considered several factors, including the utility of the bicycle's design, the potential risk from the design, the cost and availability of safer design alternatives, the aesthetics of the design, and other factors articulated by Georgia Courts.

4.

It is my opinion that this bicycle was defectively designed in that it incorporated a saddle made of a very hard material, with a straight, narrow, pointed nose. The saddle requires 80 pounds of downward force on a section approximately the size of a fingernail in the center of the saddle to depress the saddle. It offers very little resilience to shock.

5.

Other saddles available on the market require only 18 pounds of force to the same size area in order to depress the saddle.

6.

Based on my review, it is my opinion that Haro could have cost effectively incorporated a much safer saddle into the bicycle's design without impeding the usefulness of the bicycle or incurring greater cost.

- 2 -

7.

Based on my review, it is my opinion that the saddle on which Blake
Mitchell was injured was the direct and proximate cause of the injuries suffered by him.

FURTHER AFFIANT SAITH NOT.

_____
EUGENE A. SLOANE

Sworn to and subscribed before me this
22 day of February, 2003.

_____
Notary Public

```
OFFICIAL SEAL
MARIA ORTIZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-12-2004
```

- 3 -

## EUGENE A. SLOANE

1032 Ridge Court
Evanston IL 60202
~~Office: 847-864-5495   FAX 847-864-5495~~
E mail: Genesloane@AOL.COM
Home: 847-866-8372

## EXPERT WITNESS, BICYCLE ACCIDENTS FOR 30 YEARS
(Cases about 50/50 plaintiff/defense)

## AUTHOR, TWELVE BOOKS ON BICYCLING
*All books published by Simon & Schuster, Inc. NYC.*

The Complete Book of Bicycling, 25th Anniversary Edition, 1995
Eugene A. Sloane's Handy Pocket Guide to Bicycle Repair. 1992
Eugene A. Sloane's Bicycle Maintenance Manual, 1991.
The Complete Book of Bicycling. 1988.
Eugene A. Sloane's Complete Book of All Terrain Bicycles. 1988.
Eugene A. Sloane's Handy Pocket Guide to Bicycle Repair, 1988.
Eugene A. Sloane's Complete Book of All Terrain Bicycles. 1985.
Eugene A. Sloane's Bicycle Maintenance Manual. 1981.
The All New Complete Book of Bicycling. 1980.
The New Complete Book of Bicycling.  1974.
Bicycle Test Reports. 1973. Consumer Guide.
The Complete Book of Bicycling. 1970.

## ARTICLES ON BICYCLING IN:

Popular Mechanics (Monthly column, "The Bicycle Shop")
The Rotarian
Journal of American Insurance
Family Safety (National Safety Council publication)
Health
League of American Wheelmen
Journal of the California Trial Lawyers Association
World Book Encyclopedia, bicycle chapter

## OWNER'S MANUALS

| | |
|---|---|
| Schwinn Bicycle Company (revised) | Fisher MountainBikes |
| Recreation Equipment, Inc. | Cannondale Corporation (revised) |
| Christophe (France) | Specialized Bicycle Imports |
| Klein Bicycle Company | Love Bike  (Tandems) |

**1**

Was asked to do Owner's Manuals because of my expert witness experience re problems with defective manuals.

## CASES WORKED ON INCLUDE:

* Vehicle/bicycle collision *Pedestrian/bicycle collision *Rollerblade/bicycle collision*Defensive cycling *Rider error *Safety *Designated urban and off-road trail design and use of same *Helmets *Brake adjustments *Derailleur adjustments *Wheel and frame alignment, wheel shimmy *Frame, handlebar and stem failure *Hubs, bottom bracket, headset, pedal bearings, lube and adjustment *Pedals, use of toe clips and straps *Saddle adjustments *Handlebars and stem adjustments *Tires, tire repair *Chains, cleaning and replacement and chain "jump" with wheel lock-up *Use of torque wrench *Torque specs for every nut and bolt on the bicycle *Cable replacement *Frame size selection to fit the user *Responsibility of retailer re imparting data to new purchasor on braking, shifting *Retailer assembly problems, particularly by chain stores and on cheaper bicycles. *Speed bumps *Pedal/front wheel contact *Loose handlebar grips *Front wheel fall-out *Quick release adjustment and tightening *Responsibility of cyclist to check quick release before riding and to make periodic checks of other nuts and bolts as to tightness. *Responsibility of cyclist to read owner's manual, and for the retailer to give one to new bicycle purchasor *Front wheel brake lock-up

## CONSULTANT TO

Cannondale Corporation (panniers)        Austrian Government (Bicycle Touring)
Tokheim Corporation (derailleur design)   Swiss Airlines (Bicycle touring)
National Safety Council, (Bicycle Safety) Monarch-Crescent Bicycle Co.
City of Vancouver, WA (Bicycle paths, trails and lanes design.)

## INSTRUCTOR

Oakton Community College (bicycle maintenance, safety) Chicago
Walnut Creek, CA recreation department (bicycle maintenance, safety)
Clark County, WA Sheriff's Community Action Dep't. in bicycle safety training for all the county schools; Evanston Il middle schools, bicycle safety education

## OTHER BACKGROUND

Bicycles:    Worked with Gene Portuesi, then the U.S. Olympic Bicycle Team coach, in developing my expertise in bicycle maintenance and repair, 1960 - 1963. 1964 to 1968 attended bicycle conventions and trade shows in Milan, Paris and Cologne to obtain data on bicycling and bicycle products. Worked with bicycle manufacturers in the U.S., Austria, Italy, England and Sweden. Object, to obtain data for first book on bicycling, which was published in 1970. Since 1960, have bicycled extensively in the U.S., Austria, Germany, France and Holland. Biked to work 25 miles round trip in Detroit and Chicago for 11 years, in all seasons. Bicycle toured

extensively in Europe: Paris to Marseille; London to Edinburgh; Rome to Genoa; Malmo to Sandvik (Sweden); Graz to Vienna (Austria). Extensive bike trips, both road and off-road, in Illinois, Wisconsin, California, Oregon and Washington states.

| | |
|---|---|
| 1971 - Present | Expert witness, bicycle accidents. Consultant, bicycle trail and lane design |
| 1971 - Present | Write books and articles on bicycling subjects |
| 1971 - 1974 | President, The Stockbroker's Association |
| 1967 - 1970 | Director, Public Relations, The Midwest Stock Exchange |
| 1964 - 1966 | Director, Public Relations, Maremont Corp. Automotive aftermarket products. Wrote, placed articles on company products in automotive publications. Handled corporate financial relations. |
| 1960 - 1963 | Editor, Air Engineering, a professional journal for engineers, physicians and government agencies concerned with air quality control in outdoor air and in factories, hospitals; wherever humans work and live. Chaired conference on hospital operating room bacteria control at Harvard Medical School. Researched and wrote articles on these subjects, developed data with engineers, physicians, microbiologists. Researched and wrote pioneering article on relationship between factory air conditioning and worker productivity. |
| 1956 - 1959 | Director, Public Relations, The Trane Company. Worked with architects, consulting engineers in research for articles on company heating, cooling, chemical process heat exchangers installed in residential, industrial, office buildings and in chemical processing plants. Articles appeared in professional and trade journals. |
| 1948 - 1955 | Editor, Domestic Engineering, a technical journal for architects, mechanical contractors involved with plumbing and heating equipment in buildings and homes. Wrote articles on these highly technical subjects. |
| 1945 - 1947 | Sales Engineer, Metallizing Engineering Co. Sold metal spraying equipment used for depositing metals on a wide variety of surfaces for wear build-up, corrosion protection and in industrial processes. |
| Education: | Morton High, Cicero, IL. <br> Statistics and abnormal psychology, Roosevelt University. <br> Physics, electronics, University of Wisconsin. <br> Economics and technical writing, University of Chicago. <br> Physics, Illinois Institute of Technology |

## PUBLIC APPEARANCES

Ashville NC WLOS
Atlanta WQXI
Baltimore  WMAR
Bangor, ME WLBZ
**BENNET CERF SHOW**
Boston WHDH
Buffalo  WKBG
Charleston SC WCIV
Chicago  WGN-TV
Cleveland  WEWS
Denver KWGN
Flint MI  WJRT
Ft. Wayne, IN WPTA
Grand Rapids  WOOD
Harrisburg, PA WLYH
Kansas City WHB * KMBG-TV
**Kansas City WDAF-TV * KMBZ**
**Kansas City KMBC**
**Knoxville, TN        WBIR**
**Los Angeles KTTV**
**Miami, FL WTVJ**
**Milwaukee  WI WVTV**
**Minneapolis  KMSP**
**New Haven CT WHNB**
**New York  WNEW**
**Norfolk, VA  WVEC**
**Orlando WESH**
**Philadelpha  WFIL**
**South Bend, IN WSBT**
**Rochester, NY WROC**
**Sacramento CA KOVR**
**San Diego XETV**
**Savannah, Ga. WTOC**
**Seattle WA KTNT**
**St. Louis  KPLR**
**St. Louis KSD-TV * WIL-FM**
**Syracuse NY WHEN**
**Tampa  WFLA**
**TODAY SHOW**
Wichita KAKE

**PHIL DONAHUE SHOW**
Pittsburgh  KDKA-TV * WTAE
**Portland OR KATU**
**Portland, ME WMTW**
**Providence, RI WJAR**
### BOOKS REVIEWED IN

Augusta, GA Chronicle
Baton Rouge, LA Advocate
Birmingham (ALA) Magazine
Boston Globe/UPI
Boston Record
Buffalo (NY) News
**Business Week**
Charlotte (NC) Observer
Chicago Today
Chicago Sun Times
Chicago Tribune
Christian Science Monitor
Columbian (Vancouver, WA)
Columbus (OH) Enquirer
Des Moines Register
Detroit Free Press
**Forbes**
Ft. Wayne (Ind.) News-Sentinel
Hartford (CT) Courant
Indianapolis Star
Jacksonville Courier
**New York Times (best seller)**
New Haven (CT) Register
News Day (Garden City, LI NY)
**Newsweek**
Oregonian
Oregon Journal
Owensboro KY) Messenger
Pensacola (FL) News
Pittsburgh Press
**Popular Mechanics**
**Journal of American Insurance**
Lewiston (ME) Sun

**Life**
Minneapolis Tribune

Provence (France) La Vie
**Reader's Digest**
San Francisco Examiner
**Saturday Review**
Schwinn Reporterf
Seattle Post-Intellgencer
Seattle Times
South Bend (IN) Tribune
Springfield (MO) Sunday News
Tacoma (WA) Sunday Ledger
**Time**
Tulsa (OK) World
**Wall Street Journal**
Washington Post
**Women's Wear Daily**

# DUPLICATE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DEBBIE MITCHELL and STEVEN MITCHELL, individually and as Parents of and next friends of STEVEN BLAKE MITCHELL, | ) ) ) ) ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiffs, | ) ) | NO. 1:00CV2096 |
| | ) | |
| v. | ) | |
| | ) | |
| HARO BICYCLE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT HARO BICYCLE CORPORATION'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Haro Bicycle Corporation ("Haro"), by and through its counsel, provides its responses to Plaintiffs' Second Request for Production of Documents as follows:

### GENERAL OBJECTIONS

This Defendant asserts the following general objections to Plaintiffs' Request for Production of Documents:

(1)   Defendant objects to Plaintiffs' discovery to the extent that they seek disclosure of information and materials protected from disclosure by the work product doctrine, attorney-client privilege or any other doctrine or privilege, including doctrines protecting trade secrets or patents or other confidential

research, development, commercial, financial and/or proprietary information.

(2) Defendant objects to Plaintiffs' discovery to the extent that they are onerous, unduly burdensome and request information which is immaterial or irrelevant to the cause of action pled or are not calculated to lead to the discovery of admissible evidence.

(3) No incidental or implied admission of fact by Defendant is made by the responses below. The only admissions are express admissions. The fact that Defendant has produced any documents herein may not properly be taken as an admission that Defendant accepts or admits the existence of any facts set forth or assumed by such request for production of documents, or that such responses constitutes admissible evidence. The fact that Defendant has answered part or all of any request for production of documents is not intended to, and shall not be, construed to be a waiver by Defendant of all or any part of any objection of Defendant to the admissibility of same at trial, or the relevance of the response.

(4) Responses to these requests for production may be supplemented upon Defendant's further investigation and acquisition of information which Defendant does not either possess or recall at this time. However, any such further supplementation

2

shall be made only in accordance with the Federal Rules of Civil Procedure.

Expressly subject to the foregoing objections which apply to each request, Defendant responds as follows with the responses corresponding to the numbered paragraphs in Plaintiffs' Requests:

## REQUEST FOR PRODUCTION NO. 1:

Please produce any and all specification sheets, computer print-outs, order forms, catalogues, directions, blueprints, instructions or other documents in your control, custody or possession that pertain in any way to the model VL 199 saddle.

## RESPONSE:

Defendant objects to Request for Production No. 1 on the grounds that it is vague, overly broad, and unduly burdensome.

## REQUEST FOR PRODUCTION NO. 2:

Please produce any and all specification, sheets, computer print-outs, order forms, catalogues, directions, blueprints, instructions or other documents in your control, custody or possession that pertain in any way to the model VL[sic]199 saddle.

## RESPONSE:

Defendant objects to Request for Production No. 2 on the grounds that it is vague, overly broad, and unduly burdensome.

## REQUEST FOR PRODUCTION NO. 3:

Please produce any and all specification sheets, computer print-outs, order forms, catalogues, directions, blueprints, instructions or other documents in your control,

custody or possession that pertain in any way to the Shredder model bicycle marketed between 1993 and 1995.

**RESPONSE:**

Defendant objects to Request for Production No. 3 on the grounds that it is vague, overly broad, and unduly burdensome. Subject to and without waiver of the foregoing, Defendant states that it has already produced all documents in its possession that are responsive to this Request.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce any and all specification sheets, computer print-outs, order forms, catalogues, directions, blueprints, instructions or other documents in your control, custody or possession used in the manufacture of the Shredder model bicycle for the model years 1993, 1994, and 1995.

**RESPONSE:**

Defendant objects to Request for Production No. 4 on the grounds that it is vague, overly broad, and unduly burdensome. Subject to and without waiver of the foregoing objection, Defendant states that it does not manufacture or assemble bicycles and therefore it cannot identify documents used in these processes.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce any and all specification sheets, computer print-outs, order forms, catalogues, directions, blueprints, instructions or other documents that support any contention by you that the saddle that caused Blake Mitchell's injuries was not an original component part of the bicycle on which Blake Mitchell was riding at the time he was injured.

4

**RESPONSE:**

Defendant objects to Request for Production No. 5 on the grounds that it is vague, overly broad, and unduly burdensome. Subject to and without waiver of foregoing objection, Defendant states that the saddle that was on the bicycle at the time of the Plaintiff's injuries was not the same saddle that the bicycle came equipped with when it was originally assembled and sold as new. At no time has the model of the Velo saddle that allegedly caused the Plaintiff's injuries been incorporated into the original design for the bicycle at issue in this litigation.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce any and all contracts entered into by you and Velo Enterprise Corporation, Ltd. from January of 1992 until the present.

**RESPONSE:**

Defendant states that it has not entered into a contract with Velo Enterprise Corporation, Ltd. since January of 1992.

This 27ᵗʰ day of December, 2002.

PURSLEY LOWERY MEEKS LLP

By: _____
John R. Lowery
Georgia Bar No. 460175
Audrey Kohn
Georgia Bar No. 591485

SunTrust Plaza - Suite 4540
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
(404) 880-7180
(404) 880-7199

Attorneys for Defendant Haro Bicycle Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DEBBIE MITCHELL and STEVEN    )
MITCHELL, individually and as )
Parents of and next friends   )
of STEVEN BLAKE               )    CIVIL ACTION FILE
MITCHELL,                     )    NO. 1:00CV2096
                              )
        Plaintiffs,           )
                              )
    v.                        )
                              )
HARO BICYCLE CORPORATION,     )
                              )
        Defendant.            )
                              )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for the opposing party with a copy of the within and foregoing Responses and Objections of Defendant Haro Bicycle Corporation to Plaintiffs' Second Request for Production of Documents by depositing a copy of same in the United States mail in an envelope properly addressed to the following, with adequate postage thereon to ensure proper delivery:

    Wade K. Copeland, Esquire
    Ashley Sexton, Esquire
    Webb, Carlock, Copeland, Semler & Stair, LLP
    2600 Marquis Two Tower
    285 Peachtree Center Avenue
    Atlanta, Georgia 30303-1235

This the 27th day of December, 2002.

_____
Audrey R. Kohn

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for the opposing party(s) with a copy of the within and foregoing pleading by depositing a copy of same in the United States mail with adequate postage thereon to insure proper delivery to the following:

Ms. Audrey Kohn
Pursley, Howell, Lowery & Meeks, LLP
SunTrust Plaza, Suite 4540
303 Peachtree Street, NE
Atlanta, Georgia 30308

This 26th day of February, 2003.

BY:   ASHLEY E. SEXTON

ASHLEY E. SEXTON
State Bar #646425
Attorney for Plaintiffs

P.O. Box 56887
Atlanta, Georgia 30343-0887
404/522-8220

- 13 -

1616035v1

ORIGINAL



FILED IN CLERK'S OFFICE

FEB ~ 6 2003

LUTHE~ , Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEBBIE MITCHELL and STEVE          :
MITCHELL, Individually and as
Parents and Next Friends of        :
STEVEN BLAKE MITCHELL,
                                   :
            Plaintiffs,
                                   :
vs.                                CIVIL ACTION 1:00CV-2096-BBM

HARO BICYCLE CORPORATION,          :
a California Corporation,
                                   :
            Defendants/Third-Party
            Plaintiff

## PLAINTIFF'S RESPONSE TO DEFENDANT HARO BICYCLE CORPORATION'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE EXISTS NO GENUINE ISSUES TO BE TRIED

COME NOW Plaintiffs in the above action and, pursuant to Local Rule 56.1, hereby respond to Defendants' Statement of Material Facts as follows:

1.

Admitted.

2.

Plaintiffs admit that Blake was riding his bicycle at approximately 10 miles per hour towards the ramp and that as he began to jump he was in a standing position with both feet on the pedals of the bicycle. Plaintiffs controvert that any "catapulting", (which is defined as hurling or launching something from a sling shot), was involved.

3.

Plaintiffs admit that the highest part of the ramp on which Blake was jumping was approximately 16" from the ground.   Plaintiffs controvert that there was not a sloped surface for landing, as a sloped surface is pictured in the photographs attached as an exhibit to Defendants' Brief in support of its Motion for Summary Judgment.

4.

Admitted.

5.

Admitted, except to the statement that the bicycle was in poor repair which is controverted.

6.

Plaintiffs dispute that the bicycle on which Blake was riding was manufactured and assembled by Kenstone.   Although the bicycle may have been assembled by Kenstone, the bicycle was designed by Haro and assembled according to its direct specifications.   Plaintiffs also dispute that the original saddle on Blake's bicycle was not the saddle causing Blake's injuries.

7.

Plaintiffs dispute that the original seat or saddle incorporated into the bicycle by the manufacturer was not the original seat incorporated into the bicycle on which Blake was riding at the time he was injured.   James Ford has deposed that the VL 199 saddle has been incorporated into free style model bicycles, including the Shredder on which

Blake was injured, between 1993 and 1995, and that the Shredder model bicycle on which Blake was riding was a 1994 shredder.

8.

Plaintiffs dispute that the original saddle on Blake's bicycle was replaced with another saddle.

9.

Admitted.

10.

Plaintiffs admit that Haro is a recognized name in the bicycle industry and has been in the business of bicycle distribution since 1978. The Plaintiffs dispute that Haro is not the manufacturer, assembler or retailer of the bicycle or the seat or any component parts. The evidence demonstrates that Haro had an active role in the design, manufacturer and assembly of the bicycle and that it provided very detailed specifications controlling every detail of the design of the bicycle to a third-party which merely assembled it according to Haro's specifications.

11.

Plaintiffs admit that Haro selects the component parts for the given bicycle and those component parts are manufactured by numerous other companies. There exists a genuine issue of material fact as to whether Haro has influence and control over the design of component parts. There also exists a genuine issue of material fact as to whether Haro provides written specifications for the assembly of the bicycle to another

company.   It is admitted that Haro's name and logos are placed on the bicycle or component parts by the assembler or component parts manufacturer, but there exists ample evidence that this is done at the specific direction of Haro.

12.

Plaintiffs disputes that Haro is "strictly" the wholesale distributor of bicycles, but maintains that Haro has an active role in the design and manufacturer of bicycles as well as any placing of the bicycles into the stream of commerce.

13.

Admitted.   However, there is evidence that Haro does market research and testing on bicycles sold by it.   This market research and testing is used in the manufacturer of and design of bicycles by Haro.

14.

Admitted.

This 26th day of February.

CARLOCK, COPELAND, SEMLER
& STAIR, LLP

BY:   _Wade K Copeland_
      WADE K. COPELAND
      State Bar #186862

BY:   _Ashley Sexton_
      ASHLEY E. SEXTON
      State Bar #646425
      Attorneys for Plaintiffs

P.O. Box 56887
Atlanta, Georgia 30343-0887

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served counsel for the opposing party(s) with a copy of the within and foregoing pleading by depositing a copy of same in the United States mail with adequate postage thereon to insure proper delivery to the following:

Ms. Audrey Kohn
Pursley, Howell, Lowery & Meeks, LLP
SunTrust Plaza, Suite 4540
303 Peachtree Street, NE
Atlanta, Georgia 30308

This 26th day of February, 2003.

BY: _____
ASHLEY E. SEXTON
State Bar #646425
Attorney for Plaintiffs

P.O. Box 56887
Atlanta, Georgia 30343-0887
404/522-8220

1617053v1